## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM DeFORTE and EVAN TOWNSEND, | ) ) | |
| | ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:13-cv-356-MRH |
| v. | ) ) | |
| THE BOROUGH OF WORTHINGTON, and KEVIN FEENEY, | ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| EVAN TOWNSEND, | ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2:13-cv-357-MRH |
| v. | ) ) | |
| THE BOROUGH OF WORTHINGTON, and KEVIN FEENEY, | ) ) ) | |
| Defendants. | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

In these civil actions, Plaintiffs William DeForte ("DeForte") and Evan Townsend ("Townsend") have sued the Borough of Worthington (the "Borough") and its mayor, Kevin Feeney ("Feeney"),[1] for alleged wrongdoing in connection with the termination of their employment as Borough police officers. DeForte and Townsend (collectively, "Plaintiffs") contend that the Borough and Feeney (collectively, "Defendants), by their wrongful conduct, violated Plaintiffs' right to due process, violated the terms of Pennsylvania's Whistleblower

---

[1] Originally, Plaintiffs also named Borough Councilman Barry Rosen and Officer Gerald Rodgers as Defendants in Case Nos. 13-356 and 13-357, but Rosen and Rodgers have since been dismissed from both civil actions.

Law, and tortiously interfered with Plaintiffs' business relations. Defendants have moved for summary judgment on Plaintiffs' due process claims and seek a dismissal without prejudice of the remaining state law claims.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. For the reasons that follow, Defendants' motions for summary judgment will be granted.

## I.    **BACKGROUND**

DeForte was employed by the Borough as a police officer between July 2009 and November 5, 2012. (*See* Defs.' Ex. A, Decl. of Debra L. Smith at ¶1, ECF No. 97-1; Defs.' Ex. B, Affid. of William DeForte at ¶1, ECF No. 92-2; Defs.' Ex. C, Worthington Borough Council Minutes, ECF No. 97-3.)[2]    On November 5, 2012, DeForte was terminated for alleged insubordination and possible offenses. (*Id.*) At the time of his termination, DeForte was serving as the Borough's Chief of Police. (*Id.*)[3]

Townsend was twice employed by the Borough as a police officer. His first term of employment lasted from January 7 through July 9, 2011. The second term began on February 10, 2012 and ended on November 5, 2012 when Townsend, like DeForte, was terminated. (Smith Decl. ¶5; Defs.' Ex. D, Affidavit of Evan Townsend, at 1, ECF No. 97-4.)

---

[2] The parties have filed identical summary judgment papers at Case Nos. 2:13-cv-356 and 2:13-cv-357. For the sake of simplicity, the Court will reference only those filings docketed at Case No. 2:13-cv-356.

[3] In responding to the pending motions, DeForte submitted a supplemental affidavit (ECF No. 101-2), wherein he represents that he has been "duly sworn according to law" and purports to expounds on certain aspects of his employment. Although styled as a "supplemental affidavit," the document does not bear the seal of a notary public or other authorized official. Accordingly, it is not a proper affidavit for purposes of Rule 56. *See, e. g., Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970); *Proctor v. Sagamore Big Game Club*, 265 F.2d 196, 198-99 (3d Cir.)("[S]elf-serving unverified statements of fact asserted by plaintiffs are not the type of proof which F.R.Civ.P. Rule 56(c), 28 U.S.C. requires for the resolution of a motion for summary judgment."); *X v. Brierley*, 457 F. Supp. 350, 352 (E.D. Pa. 1978)(document containing statements that were never were never sworn to before a public notary or other authorized official could not be considered for summary judgment purposes). Similarly, the document cannot be construed as a valid declaration, inasmuch as it lacks any acknowledgment that the statements therein are being made under penalty of perjury. *See* 28 U.S.C. §1746 (allowing unsworn declaration to be offered in lieu of affidavit when sworn "under penalty of perjury"). DeForte's "supplemental affidavit" will therefore be disregarded for purposes of the Court's Rule 56 analysis.

At the time of Plaintiffs' terminations, the Borough's Police Department was comprised of four part-time officers, including DeForte and Townsend. (Smith Decl. ¶¶ 2, 6, 9; *see also* Pls.' Br. Resp. Defs.' Mot. Summ. J. at 4, ECF No. 101 (noting that every officer in the Worthington Police Department worked part-time).) Neither DeForte nor Townsend was salaried, and neither one received benefits. (Smith Decl. ¶¶ 4, 8.) Both DeForte and Townsend received an hourly wage. (*Id.* ¶¶2, 3, 6, 7.) Townsend earned $11.00 an hour, while DeForte was paid $13.00 per hour and $19.50 per hour for overtime. (*Id.* ¶¶3, 7.)

While employed as police officers for the Borough of Worthington, both DeForte and Townsend were simultaneously employed by other police departments. (DeForte Affid. ¶¶5, 9; Townsend Affid. ¶¶5-6.) Townsend served as a sworn officer for other police departments and also attended SWAT school. (Townsend Affid. ¶¶4, 6.) Townsend states that "[s]ome of the Worthington Borough officers would work movie details together, and when the need arose, they would take calls in each other's towns." (*Id.* ¶8.) DeForte was similarly "rostered" as a part-time police officer for two adjacent municipalities. (DeForte Affid. ¶9.) His employment with the other police departments "ranged from helping those departments with firearms qualifications, to taking the occasional part-time shift [during] times that [he] was not fulfilling [his] obligations as Worthington's Police Chief." (*Id.* ¶12.) During the time period in question, DeForte was also an undergraduate student at the University of Pittsburgh. (DeForte Affid. ¶7.)

Despite their multiple endeavors, Plaintiffs insist that their employment with the Borough was their top priority and that they were available at all times to fulfill their duties as Worthington Borough police officers. DeForte claims that, during his tenure as the Borough's police chief, he "was available at all times for Worthington Borough Police Business. This meant that [he] had to immediately respond and abandon any and all other activities in [his] life

upon receipt of an emergency call relating to Worthington Police Department matters." (DeForte Affid. ¶4.) He states that his "entire life revolved around [his] responsibility as Worthington's Police Chief," (*id.* ¶6), and the requirement that he be "on call any and all times" meant that he had to be "available to respond to overdose deaths, hostage situations, explosive devises, dead bodies, ethnic intimidation complaints, and other police emergencies" in the Borough. (*Id.* ¶5.) Regarding his attendance at the University of Pittsburgh, DeForte asserts that there were "often occasions" when he received emergency calls for police business and, when this occurred, he "immediately left [his] class in order to answer" the call. (DeForte Affid. ¶¶ 7-8.) DeForte maintains that his part-time employment with other police departments was "subordinate" to his employment with the Borough, (*id.* ¶11), and it was "understood. . . that [he] would immediately abandon all other activities in order to service the community of Worthington Borough." (*Id.* ¶13.)

Townsend similarly maintains that he "was always on call any and all times for Worthington Borough Police Department." (Townsend Affid. ¶9.) According to Townsend, "[t]his meant that [he] had to immediately respond and abandon any and all other activities upon receipt of an emergency call relating to Worthington Police Department matters." (*Id.* ¶5.)

Following their respective terminations, Plaintiffs commenced separate lawsuits alleging, among other things, that their loss of employment constituted a deprivation of their respective procedural due process rights. Thereafter, the two cases were consolidated and extensive pretrial proceedings ensued, the details of which are not relevant to the parties' present dispute.

Defendants filed their motions for summary judgment, asserting that Plaintiffs' due process claims fail as a matter of law insofar as DeForte and Townsend did not possess any constitutionally protected property interest in their employment. (*See* Case No. 2:13-cv-356 at

4

ECF No. 96; Case No. 2:13-cv-357 at ECF No. 50.) Plaintiffs have responded to the motions, and the Defendants have filed their reply. As a result, the Defendants' motions are ripe for disposition.

## II.    **LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine only if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a court must draw all reasonable inferences from the underlying facts in the light most favorable to the non-moving party." *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 162 (3d Cir. 2001). "When there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (alteration and internal quotation marks omitted). "To defeat a motion for summary judgment, the nonmoving party must raise more than some metaphysical doubt as to the material facts, and the court must determine that a fair-minded jury could return a verdict for the nonmoving party on the evidence presented." *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011) (internal citations, alterations, and quotation marks omitted).

## III.    **ANALYSIS**

### A. *Plaintiffs' Federal Claims*

Plaintiffs' due process claims are asserted under 42 U.S.C. §1983, which affords a private right of action against:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ...

42 U.S.C. § 1983. In order to state a claim under Section 1983, a plaintiff must allege a violation of the Constitution or federal law by a person acting under color of state law. *Riley v. Corbett*, 622 F. App'x 93, 93–95 (3d Cir. July 29, 2015) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Here, there is no dispute that Defendants acted under color of state law when they discharged DeForte and Townsend. Consequently, the only question is whether the Defendants' conduct violated the U.S. Constitution or federal law. Plaintiffs contend that their respective rights to procedural due process were offended inasmuch as neither officer received notice or a hearing prior to termination.

To establish a procedural due process claim, a plaintiff must demonstrate that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty or property, and (2) the procedures available to him did not provide due process of law." *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009) (internal quotation marks and citation omitted). For present purposes, Defendants do not challenge the assertion that DeForte and Townsend were terminated from their jobs without process. Instead, Defendants argue only that Plaintiffs had no constitutionally protected "property" interest in continuing their employment as Borough police officers.

Whether a public employee has a property interest in his employment sufficient to establish a due process claim is a question of state law. *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006); *see also Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Public employees in Pennsylvania have a property interest in their employment only if they can "establish a legitimate expectation of continued employment through either a contract or a

statute." *Pipkin v. Pennsylvania State Police*, 693 A.2d 190, 193 (Pa. 1997). Here, Plaintiffs have alleged that they had a legitimate expectation of continued employment by virtue of: (1) the Pennsylvania Borough Code, (2) the Pennsylvania Police Tenure Act, (3) the Worthington Police Department Policy and Procedure Manual, (4) the Pennsylvania Whistleblower Law, and/or (5) a Worthington ordinance setting forth a progressive discipline policy.

### 1. The Pennsylvania Borough Code

The Pennsylvania "Borough Code," currently codified at 8 PA. CONS. STAT. ANN. §§101 *et seq.,* contains certain civil service protections for police officers and firefighters. *See id.* at §§1170-1194. At times relevant to this litigation, the pertinent provisions of the civil service system were codified at 53 PA. STAT. §§46171-46195.[4] These provisions applied to boroughs having a police force of at least three members. 53 PA. STAT. §46171(a). Section 46171 of the Code provided that any "appointment to and promotion in the police force . . . shall be made only according to qualifications and fitness, to be ascertained by examinations which shall be competitive as provided in this part." *Id.* §46171(c). In addition, the Code ensured that "[n]o person shall hereafter be suspended, removed or reduced in rank as a paid employe in any police force. . . except in accordance with the provisions of this subdivision." *Id.* §46171(d). Section 46190 specifically enumerated the limited circumstances under which a "person employed in any police . . . force" could be suspended, removed or reduced in rank. 53 PA. STAT. §46190.[5] The term "police force" was defined, in relevant part, as:

---

[4] Sections 46171 through 46195 were repealed effective June 17, 2014, by P.L. 432, No. 37, §3(2) (April 18, 2014).

[5] These included the following circumstances:

> (1) Physical or mental disability affecting his ability to continue in service, in which cases the person shall receive an honorable discharge from service.
> (2) Neglect or violation of any official duty.
> (3) Violation of any law which provided that such violation constitutes a misdemeanor or felony.

a police force organized and operating as prescribed by law, the members of which devote their normal working hours to police duty or duty in connection with the bureau, agencies and services connected with police protection work, and who are paid a stated salary or compensation for such work by the borough. Police force as used in this subdivision shall not include: . . .

(4) Any extra police serving from time to time or on an hourly or daily basis. . . .

53 PA. STAT. §46195.[6]

Defendants contend that Plaintiffs were not "members" of a "police force" and, therefore, they lacked any legitimate expectation of continued employment inasmuch as they were not subject to the civil service protections of the Borough Code. Based on the undisputed facts of record, this Court agrees.

As Section 46195 makes clear, a "police force" subject to the civil service system consists of members who "devote their normal working hours to police duty" and "are paid a stated salary or compensation for such work." 53 Pa. Stat. §46195. It specifically excludes "extra police serving from time to time or on an hourly or daily basis." Here, it is undisputed that the Borough employed DeForte and Townsend on a part-time basis. The officers were paid an hourly wage and received no additional benefits. DeForte and Townsend each held other employment during the time that they served as Worthington Borough police officers. Although they may have worked for the Borough on a regular basis, even earning overtime pay on occasion, nonetheless their compensation would have varied depending on the number of hours worked. Defendants' Exhibit C demonstrates, for example, that Townsend worked 33.5 hours

---

(4) Inefficiency, neglect, intemperance, immorality, disobedience of orders, or conduct unbecoming an officer.

(5) Intoxication while on duty.

(6) Engaging or participating in conducting of any political or election campaign otherwise than to exercise his own right of suffrage.

53 PA. STAT. §46190.

[6] The current version of this provision, in its amended form, is now codified at 8 PA. CONS. STAT. ANN. §1170. For present purposes, there are no material differences between the two versions of the statute. Accordingly, case law interpreting 8 PA. CONS. STAT. ANN. §1170 is relevant to the Court's analysis and is cited herein.

during the period October 16 to 31, 2012 and earned $297.17 in wages, while DeForte had no compensable hours during that period. (ECF No. 97-3 at p. 5.) Nor is there any claim or evidence in the record to suggest that Plaintiffs were originally hired through civil service procedures. Based on the record evidence before this Court, no reasonable jury could find that the members of the Worthington Borough Police Department "devote[d] their normal working hours to police duty" for the Borough and were "paid a stated salary or compensation for such work. . . ." 53 PA. STAT. §46195. In fact, the record reveals that they served "from time to time" and were paid on an "hourly or daily basis," placing them squarely within the exception to civil service coverage contained in the Borough Code. Accordingly, because Plaintiffs were not members of a "police force" subject to the protections of the civil service system, the Borough Code did not afford them a protected property interest in continued employment.

Other federal courts within this Commonwealth have similarly and recently concluded that part-time police officers who were compensated on an hourly basis had no legitimate expectation of continued employment under the provisions of the Borough Code. *See, e.g., Clark v. Colwyn Borough,* Civil Action No. 12-3668, 2015 WL 4722570, at \*8 (E.D. Pa. Aug. 10, 2015) ("In interpreting [the currently operative version of 53 Pa. Stat. §46195] in the context of due process claims, courts in this District have uniformly found that part time officers do not have a continued expectation of employment under the statute.") (citing *Stevens v. Telford Borough*, No. 11–7216 2014 WL 4056952 at \*6 (E.D. Pa. Aug 14, 2014) (finding that an officer who worked on an hourly basis was "specifically excluded by statute from the due process protections afforded to full-time officers")); *Mariano v. Borough of Dickson City*, Civil Action No. 3:13-0097, 2014 WL 5795679, at \*5 (M.D. Pa. Nov. 6, 2014)("There is no dispute that plaintiff was a part-time officer who was paid on an hourly basis, and so Pennsylvania law does

9

not afford him a property interest in his continued employment."); *Hofnagle v. Pine Grove Borough,* No. 3:12-CV-2468, 2013 WL 2435363, at \*5 (M.D. Pa. June 4, 2013) (dismissing plaintiffs' Fourteenth Amendment claim on the basis that "only full-time police officers are entitled to procedural due process under the law," and citing 53 Pa. Stat. §46195(4)); *Rosati v. Borough of Hellertown*, No. 91–6484 1992 WL 396769 at \*2–3 (E.D. Pa. Dec. 24, 1992) (finding that, because a part-time officer was paid on an hourly (rather than a salaried) basis, he was considered "extra police" and had no property interest in his employment).

Plaintiffs nevertheless contend that, despite their status as "part-time" employees, they were required and expected to be on call and available for duty as Worthington Borough police officers at all times. Plaintiffs cite *Stevens, supra,* for the proposition that, "[t]o determine whether a police officer hired in a part-time capacity . . . should be considered a full-time officer for termination process purposes, Pennsylvania considers whether the plaintiff was 'available or on call for duty at any and all times.'" 2014 WL 4056952, at \*4 (quoting *Mullen v. Borough of Parkesburg,* 572 A.2d 859, 861 (Pa. Commw. Ct. 1990) (citing *Petras v. Union Twp.,* 187 A.2d 171 (Pa. 1963)).

Notably, the two cases cited by the *Stevens* court – *i.e., Mullen* and *Petras* -- were decided not under the relevant provisions of the Borough Code, but instead under the Police Tenure Act, 53 Pa. Stat. Ann. §§811-816, a separate statute that applies to smaller municipalities, including boroughs that have a police force of less than three members. *See* 53 PA. STAT. §811. Where applicable, the Police Tenure Act provides that "[n]o person employed as a regular full time police officer . . . shall be suspended, removed or reduced in rank except for [certain enumerated] reasons . . . ." *Id.* § 812. The courts in *Mullen* and *Petras* were thus called upon to determine whether the plaintiffs in each of those cases was a "regular full time police officer," a

term not defined in that statute – a statute which, for the reasons set out in the next section of this Opinion, is not applicable in this case.

Notably, the *Petras* Court concluded that the relevant test for determining "full time" employment "is not the number of days, length of hours, or terms of employment but rather whether or not the duties were such that [the plaintiff] was 'available for full employment,' that is[,] on call at any and all times." 187 A.2d at 174. Applying this test, the court held that, "since the plaintiff was required to be available for work during the whole term of his employment, he was in fact a full time employee." 187 A.2d at 175.

The court in *Mullen* applied this same test, but reached a different result. In *Mullen,* the plaintiff was working approximately 32 hours a week for the Borough of Parkesburg while also working full-time hours as a police officer for another municipality. After being terminated, the plaintiff sued the Borough for alleged violations of the Police Tenure Act. The Pennsylvania Commonwealth Court concluded that the plaintiff could not be considered a regular, full-time police office for Parkesburg Borough, because he was not available to serve as a Borough police officer at any and all times and could only be available during the time that he was not on duty for the other municipality. 572 A.2d at 861.

Critically, neither *Petras* nor *Mullen* involved pronouncements concerning the express provisions of the Borough Code that are at issue here. And, although the court in *Stevens* discussed the *Petras* test in considering whether a police officer is entitled to protection under the civil service provisions of the Borough Code, the courts in *Clark, Mariano,* and *Rosati* did not. Further, and importantly, at the end of the day in *Stevens,* that court applied the express provisions of the Borough Code, and not the Police Tenure Act, in concluding that under state law, the police officer there, like the Plaintiffs here, was serving from "time to time" and on an

11

"hourly or daily basis." Also critically, the *Stevens* court held that there were no other statutory provisions that would vest the officer with "any expectation of continued employment." *Stevens,* 2014 WL 4056952 at \*6. Thus, from this Court's perspective, *Stevens* does not, in the end, run counter to the prevailing body of decisional law that applies the Borough Code as the Court does here.

Separately and distinctly, to the extent the principles enunciated in *Petras* have any application here, this Court remains of the view that no genuine issue of material fact exists concerning Plaintiffs' status as other than "regular, full-time employees." As noted, it is undisputed that both DeForte and Townsend worked part-time hours for Worthington Borough and were compensated on an hourly basis. It is further undisputed that each Plaintiff, while employed by the Borough, was also simultaneously employed as a police officer for at least *two* other municipalities. Both Plaintiffs insist that their employment with Worthington Borough was their top priority, that they were constantly "on call" for that Borough, and that there was never an instance in which they failed to respond to the call of duty as Worthington Borough police officers. Whether or not actual conflicts ever arose is not dispositive, however, as the test is one of actual availability. Plaintiffs' self-serving assertion that they were always on call and available to serve the Borough is belied by the self-evident fact that police work, by its very nature, involves matters of public safety that are often dangerous, rapidly evolving, and inherently unpredictable. As Defendants suggest, it is legally unreasonable to conclude that either officer, if engaged in an emergency police situation in another municipality, would have been free to simply leave the situation in order to handle a less emergent situation in Worthington Borough. *Accord Mullen,* 572 A.2d at 861 (plaintiff was not a full-time police officer for borough where he could only be available during the time that he was not on duty in

12

another municipality); *Yatzor v. Washington Twp Comm'rs,* 290 A.2d 425 (Pa. Commw. Ct. 1972) (plaintiff was not a "regular full-time police officer" where his main source of income made him unavailable for police work several days a week). In instances where the "other" employment was outside of police work, the record has supported the conclusion that such was not inconsistent with an expectation that the police obligations would sit in the driver's seat. *See Risk v. Burgettstown Borough, Pa.,* No. CIV.A. 05-1068, 2008 WL 4925641, at *4 (W.D. Pa. Nov. 14, 2008) (finding, in the context of religious discrimination case, that part-time police officer would have been protected by the seniority furlough provisions of either the Police Tenure Act or the Borough Code, despite the fact that plaintiff held a second job as a school bus driver; court noted that plaintiff's other job did not conflict with the needs of the Borough, and no evidence was presented that the plaintiff was ever unavailable when needed by the Borough or that he was employed merely as "extra police"), *aff'd,* 364 F. App'x 725 (3d Cir. 2010); *Droz v. Brownstown Borough,* 43 Pa. D. & C. 2d 205 (C.C.P. Cambria Cty. 1967) (plaintiff who held primary employment at a steel company and worked only three hours a week as a police officer for a period of eight years was nevertheless a "regular full-time police officer" entitled to protection under the Police Tenure Act; plaintiff was on call as a police officer at all times, 24 hours a day, and on several occasion he had responded to calls by the police chief for additional help).

For each of the reasons noted, the Court concludes, as a matter of law, that Plaintiffs were not members of a "police force" covered by the civil service provisions of the Borough Code. Because they lacked these protections, Plaintiffs had no expectation of continued employment under the Borough Code.

## 2. The Police Tenure Act

Plaintiffs alternatively contend that, if they are not entitled to the protections of the Borough Code's civil service provisions, then the protections of Pennsylvania's Police Tenure Act must apply. As previously noted, the Police Tenure Act is applicable "to each borough and township of the first class having a police force of less than three members. . . ." 53 Pa. Stat. §811. Under the terms of this Act,

> No person employed as a regular full time police officer in any police department of any township of the second class, or any borough or township of the first class within the scope of this act, with the exception of policemen appointed for a probationary period of one year or less, shall be suspended, removed or reduced in rank except for the following reasons: (1) physical or mental disability affecting his ability to continue in service, in which case[ ] the person shall receive an honorable discharge from service; (2) neglect or violation of any official duty; (3) violating of any law which provides that such violation constitutes a misdemeanor or felony; (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; (5) intoxication while on duty. A person so employed shall not be removed for religious, racial or political reasons. A written statement of any charges made against any person so employed shall be furnished to such person within five days after the same are filed.

53 Pa. Stat. Ann. § 812 (internal footnote omitted).

Plaintiffs acknowledge that, at all times relevant to this lawsuit, the Worthington Borough Police Department had four part-time officers. To the extent these part-time employees did not constitute a "police force" for purposes of the Borough Code, Plaintiffs reason that the Borough must therefore have had no police force members at all, making the Borough subject to the protections of the Police Tenure Act.

This argument lacks merit. By its terms, the Police Tenure Act applies only to police forces consisting of less than three members. The Pennsylvania Commonwealth Court has held that, for purposes of determining the size of the subject police force – and therefore, the applicability (or non-applicability) of the Police Tenure Act, it matters not whether the force consists of full-time or part-time officers. *See Mullen,* 572 A.2d at 861 ("[O]ther than [the

plaintiff], the Borough only employed a Chief of Police and a Sergeant. It directly follows that Mullen, whether full-time or part-time, constitutes the third member of the Borough's police force."); *see also Albrechta v. Borough of White Haven,* 810 F. Supp. 139, 143 (M.D. Pa. 1992) (applying *Mullen* and finding that "for the Police Tenure Act to be applicable, White Haven's police force must have consisted of less than three members, whether full-time or part-time"). Here, Plaintiffs concede that Worthington Borough's police force consisted of four part-time police officers, including themselves, at the time of their terminations. Accordingly, the Police Tenure Act has no applicability to this case, and even if it did, Plaintiffs were not "regular full-time" officers entitled to the protections of the Tenure Act for the reasons previously discussed.

### 3. The Worthington Borough Police Department Policy and Procedure Manual

In their respective pleadings, DeForte and Townsend each asserted a constitutionally protected property interest in their jobs arising from, among other things, the "Worthington Police Department Policy and Procedure Manual." (DeForte Second Am. Compl. ¶76(c), ECF No. 42; Townsend Second Am. Compl. ¶37(c), ECF No. 43.) Plaintiffs contend that a genuinely disputed issue of fact remains as to whether the Borough's police department manual conferred on them a legitimate expectation of continued employment.

In support of this proposition, Plaintiffs cite *Stevens v. Telford Borough, supra,* wherein the court stated the following:

> In determining whether a manual constitutes a binding contract in Pennsylvania, a court must ask whether "a reasonable person in the employee's position would interpret [a handbook's] provisions as evidencing the employer's intent to be legally bound and supplant the at-will rule." *Luteran v. Loral Fairchild Corp.*, 455 Pa. Super. 364, 688 A.2d 211, 214 (Pa. Super. Ct. 1997); *see also, Martin v. Capital Cities Media, Inc.*, 354 Pa. Super. 199, 511 A.2d 830, 842 (Pa. Super. Ct. 1986). This question not one of fact, but one of legal interpretation reserved for the court. *Ruzicki v. Catholic Cemeteries*, 416 Pa. Super. 37, 610 A.2d 495, 497 (Pa. Super. Ct. 1992) ("[I]t is for the court to interpret the handbook to discern whether it contains evidence of the employer's intention to be legally bound.");

> *Reilly v. Stroehmann Bros. Co.*, 367 Pa. Super. 411, 532 A.2d 1212, 1216 (Pa. Super. Ct.1987) ("whether the employment handbook evidences an intent that it become a legally binding contract ... is a question of interpretation and is therefore left to the court."); *Martin*, 511 A.2d at 841 ("It is for the court to interpret the handbook to discern whether it contains evidence of the employer's intention to be legally bound.....").

*Stevens,* 2014 WL 4056952, at *7. Plaintiffs contend that there is presently no evidence before the Court that would permit it to make a determination as to whether the policy manual evidences an intention to bind the parties. Consequently, Plaintiffs insist that entry of summary judgment would be inappropriate.

Plaintiff's argument in this regard is unconvincing. In Pennsylvania, the general rule is that a "public employee takes his job subject to the possibility of summary removal by the employing authority. He is essentially an employee-at-will." *Scott v. Phila. Parking Auth.*, 166 A.2d 278, 280 (Pa. 1960); *see also Rank v. Twp. of Annville*, 641 A.2d 667, 670 (Pa. Commw. Ct. 1994); *Bolduc v. Bd. of Supervisors*, 618 A.2d 1188, 1190 (Pa. Commw. Ct. 1992). Consequently, public employees in Pennsylvania generally have no legitimate entitlement to continued employment. *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citing authority). Moreover, "[a] local government in Pennsylvania cannot provide its employees with tenure status unless there exists express legislative authority for doing so." *Id.* at 282 (citing authority). That is because "[t]enure in public employment, in the sense of having a claim to employment which precludes dismissal on a summary basis is, where it exists, a matter of legislative grace . . . ." *Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333, 334 (Pa. 1995) (quoting *Scott,* 166 A.2d at 280-82); *see also Elmore,* 399 F.3d at 283 ("Absent explicit enabling legislation from the Pennsylvania General Assembly, a township such as Huntington cannot employ workers on anything but an at-will basis.") (citing authority).

16

In *Stevens,* the court held that the Telford Borough Police Department's Policy Manual and Rules and Procedures ("Manual") did not confer upon the plaintiff contractual employment rights inasmuch as (1) there was no clear evidence of the Borough's intent to abrogate the default presumption of employment-at-will, and (2) no reasonable employee in the plaintiff's position could interpret the Manual as doing so. *Stevens,* 2014 WL 4056952, at \*7. The *Stevens* court did not address the more fundamental rule that local governments in Pennsylvania cannot provide their employees with tenure status absent a legislative grant of authority. *See Elmore,* 399 F.3d at 282.

Presumably, the civil service protections applicable to members of a "police force" under the Pennsylvania Borough Code constitutes the type of "legislative grace," *Stumpp,* 658 A.2d at 334, that would permit Worthington Borough to deviate from the usual employment-at-will presumption. *See Elmore,* 399 F.3d at 283 n. 4 ("Examples of 'legislative grace' . . . whereby the Pennsylvania General Assembly has precluded the dismissal of public employees on a summary basis include the Civil Service Act, *see* 71 PA. CONS. STAT. § 741.1 *et seq.,* and the Public School Code of 1949, *see* 24 PA. CONS. STAT. § 1–101 et seq.") (quoting *Stumpp,* 658 A.2d at 334). As previously discussed, however, the state legislature has limited the reach of the Borough Code's civil service protections to members of a "police force" as that term is statutorily defined, and Plaintiffs do not fall within that definition. Nor, apparently, is this a situation where members of the Worthington Borough Police Department have obtained contractual employment rights pursuant to the collective bargaining process authorized by Act 111. *See* 43 PA. STAT. §217.1 (granting police officer and firefighters employed by a political subdivision of the Commonwealth the right to engage in collective bargaining). Consequently, Worthington Borough lacked the authority to offer Plaintiffs a contract of employment. *See*

*Elmore,* 399 F.3d at 283 ("Absent explicit enabling legislation from the Pennsylvania General Assembly, a township such as Huntington cannot employ workers on anything but an at-will basis.") (citation omitted).

Even assuming, however, that Worthington Borough *did* have the authority to employ Plaintiffs on more than an "at-will" basis, the record does not support a reasonable inference that the Borough did so. Here, Plaintiffs have produced no evidence, much less "clear evidence," that the Borough, through the alleged policy and procedure manual, intended to abrogate the default presumption that Plaintiffs were at-will employees. Not only is the purported manual not part of the record, but Plaintiffs cite no portion of it directly, either in their pleadings or their brief. In fact, the operative pleadings provide nothing more than a self-serving, conclusory averment that each Plaintiff had a constitutionally protected interest in his job arising from the "Worthington Police Department Policy and Procedure Manual." *(See* ECF No. 42, ¶76; ECF No. 43, ¶37.) Similarly, Plaintiffs' brief in response to the pending motion offers only a conclusory assertion that the manual "precludes discipline except for cause." (Pls.' Br. Opp. Mot. Summ. J. at 11, ECF No. 101.) This is plainly insufficient, since "[u]nsubstantiated arguments made in briefs are not considered evidence of asserted facts." *Boomer v. Samuals*, No. 3:CV-14-1692, 2017 WL 1062418, at *3 (M.D. Pa. Mar. 21, 2017) (citing *Versarge v. Twp. of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993)). Thus, there is nothing in the record to substantiate Plaintiffs' bald assertion that the alleged policy and procedures manual gave them a protected property interest in continued employment.[7]

---

[7] To the extent Plaintiffs are suggesting that the Court may not reach this issue and/or that Defendants failed to demonstrate the absence of a genuine issue of material fact, this Court is not persuaded. Defendants' motion explicitly requests summary judgment on the §1983 due process claims by pointing to a fatal deficiency in one essential element of those claims – namely, the requirement that Plaintiffs demonstrate a protected property interest in their continued employment. To satisfy their initial Rule 56 obligation, defendants need not refute every possible legal theory that might support a plaintiff's claim. *See* Fed. R. Civ. P. 56(a) (allowing a party to move for summary judgment by identifying each *claim, or the part of each claim* on which summary judgment is sought). Furthermore,

### 4. The Worthington Borough Ordinance of Progressive Discipline

In their respective pleadings, DeForte and Townsend each asserted a constitutionally protected property interest in their jobs arising from, among other things, a "Worthington Ordinance setting forth a progressive discipline policy." (DeForte Second Am. Compl. ¶76(d), ECF No. 42; Townsend Second Am. Compl. ¶37(d), ECF No. 43.) Plaintiffs contend that summary judgment is inappropriate because an issue of fact remains as to whether they had a legitimate expectation of continued employment as Worthington Borough police officers by virtue of the aforementioned ordinance.

Again, the Court is not persuaded that a genuinely disputed issue of material fact exists. Defendants have met their *prima facie* obligation under Rule 56 by pointing out the absence of evidence to support a finding that DeForte and Townsend had a protected property interest in their jobs. Fed. R. Civ. P. 56(a). In order to overcome Defendants' motion for summary judgment, Plaintiffs must go beyond the allegations in their pleadings and point to evidence in the record that supports the existence of a genuinely disputed issue relative to the purported property interest. Fed. R. Civ. P. 56(c)(1)(A); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Here, Plaintiffs have offered nothing beyond their conclusory assertion that they are protected under "the Worthington Ordinance setting forth a progressive discipline policy." (Pls.' Br. Resp. Defs.' Mot. Summ. J. at 12, ECF No. 101.) To date, Plaintiffs have not identified this purported ordinance either in their operative pleadings or in their brief opposing summary

---

the law is clear that, once an essential element of a plaintiff's claim has been challenged, it is incumbent upon the plaintiff to identify evidence that could give rise to an issue of fact supporting that element. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which it will bear the burden of proof). As is clear from the *Stevens* court's analysis, Plaintiffs had the burden of demonstrating that the alleged manual demonstrates a clear intent on the part of the Borough to overcome the Plaintiffs' presumptive at-will employment status.

judgment, and Defendants specifically deny that such an ordinance exists. (*See* Defs.' Reply Br. Supp. Mot. Summ. J. at 7, ECF No. 102.) To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Plaintiffs have failed to demonstrate the existence of a genuinely disputed issue of fact insofar as they claim a protected interest in continued employment under the as-yet-unidentified ordinance.

### 5. The Pennsylvania's Whistleblower Law

Finally, DeForte and Townsend have each asserted a constitutionally protected property interest in their jobs arising from the Pennsylvania Whistleblower Law. (*See* DeForte Second Am. Compl. ¶76(b), ECF No. 42; Townsend Second Am. Compl. ¶37(b), ECF No. 43.) Plaintiffs contend that genuine issues of material fact exist as to this theory and, making a grant of summary judgment premature.

The Court does not agree. For reasons previously discussed, Plaintiffs were at-will employees not subject to the protections afforded by the Borough Code's civil service provisions. "'The decisional law is clear that an at-will employee does not have a legitimate entitlement to continued employment because [he] serves solely at the pleasure of [his] employer.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (quoting *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005)). Although the Pennsylvania Whistleblower Law affords covered employees a remedy for wrongful discharge, discrimination or retaliation when undertaken with a specific, unlawful intent, *see* 43 Pa. Stat. §§1423-1424, it does not confer on

at-will employees a constitutionally protected property interest in their continued employment. *See Conrad v. Northumberland Cty.*, No. 4:09-CV-1326, 2010 WL 454960, at *6 (M.D. Pa. Feb. 3, 2010) (dismissing procedural due process claim on the grounds that the plaintiff, an at-will employee, did not have a legitimate entitlement to continued employment; court noted that, "[e]ven if [plaintiff] is entitled to relief as a whistle blower, there is nothing in the Pennsylvania case law to suggest that status as a whistle blower confers a property right in continued employment"); *see also Dichter v. City of Phila.,*Civil Action No. 14-5611, 2015 WL 1511028, at *10-11 (E.D. Pa. April 1, 2015) (dismissing procedural due process claim of at-will employee on the grounds that plaintiff/employee lacked a property interest in her job, despite plaintiff's claim that she had a property interest by virtue of Pennsylvania's Whistleblower Law).

### 6. Summary of the Court's Analysis

In sum, the Court finds that there is no genuinely disputed issue concerning the fact that Plaintiffs lacked a constitutionally protected property interest in their jobs as police officers for the Borough of Worthington. Because Plaintiffs cannot establish this material element of their procedural due process claims, Defendants' Motion for Summary Judgment will be granted as to the §1983 claims asserted at Count I of their respective pleadings.

### B. Plaintiffs' State Law Claims

Plaintiffs' only remaining causes of action at this juncture arise under Pennsylvania law. At Count III of their respective pleadings, DeForte and Townsend have asserted claims under Pennsylvania's Whistleblower Law. (*See* DeForte Second Am. Compl. ¶¶ 80-88, ECF No. 42; Townsend Second Am. Compl. at ¶¶ 44-52, ECF No. 43.) At Count IV of their respective pleadings, they have asserted claims for tortious interference with business relations. (DeForte

Second Am. Compl. ¶¶ 89-106, ECF No. 42; Townsend Second Am. Compl. at ¶¶ 53-67, ECF No. 43.)[8]

Having disposed of Plaintiffs' federal §1983 claims, this Court has only supplemental jurisdictional over the remaining state law claims. Pursuant to 28 U.S.C. §1367, a federal court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1367(c)(3). As a general matter, when all federal claims have been dismissed from the lawsuit, a district court should refrain from exercising supplemental jurisdiction, absent extraordinary circumstances. *Angeloni v. Diocese of Scranton*, 135 F. App'x 510, 515 (3d Cir. 2005) (citations omitted). "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).

In this case, no extraordinary circumstances exist as might compel the Court to retain supplemental jurisdiction over the Plaintiffs' remaining state law claims. The state law claims in this action are factually related to the federal claims, but they do not involve issues of federal policy and are better resolved in state court. Full discovery has not yet occurred, so the case is still in a relatively early procedural posture. To the extent there have been delays in the litigation thus far, the delays are primarily attributable to Plaintiffs' failure to timely prosecute their claims. Considerations of judicial economy, convenience, fairness, and comity do not otherwise militate in favor of continued federal jurisdiction. Accordingly, Plaintiffs' Whistleblower and tortious interference claims will be dismissed without prejudice so that Plaintiffs can pursue them in state court.

---

[8] Both Plaintiffs asserted claims for alleged conspiracy at Count II of their respective pleadings; however, the conspiracy claims were previously dismissed.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment will be granted as to Count I of DeForte's Second Amended Complaint and Count I of Townsend's Second Amended Complaint. Plaintiffs' remaining claims under Pennsylvania's Whistleblower Law and for tortious interference with business relations will be dismissed without prejudice so that Plaintiffs may reassert them in state court.

An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: March 24, 2017

cc:     All counsel of record